UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>LAWRENCE OAKIE,<br><br>Defendant. | 3:18-CR-30039-RAL<br><br>OPINION AND ORDER ON MOTION FOR COMPASSIONATE RELEASE |

A federal grand jury indicted Lawrence Oakie (Oakie) on three counts of abusive sexual contact of a child in violation of 18 U.S.C. §§ 1153, 2244(a)(5), and 2246(3). Doc. 1. This Court conducted a jury trial in September of 2019, and the jury found Oakie guilty on all three counts. Docs. 96, 98. On January 13, 2020, this Court held a sentencing hearing in Oakie's case and imposed a custody sentence of 96 months on each count to run concurrently followed by seven years of supervised release. Docs. 121, 122 at 2–3.

Oakie is currently incarcerated at Federal Correctional Institution Pekin (FCI Pekin) and has filed a pro se motion for compassionate release, citing his health conditions, family circumstances, and the global COVID-19 pandemic as justification. Doc. 136. The Federal Public Defender Office for the Districts of North and South Dakota (FPD) has submitted a supplement to Oakie's motion, and the Government has responded in opposition. Docs. 140, 142. FPD has replied. Doc. 143. This Court has considered Oakie's motion, and for the reasons stated herein, denies his motion at this time.

**I.     Background**

1

Oakie's conviction resulted from a sexual assault he perpetrated on a minor victim. Doc. 117 at ¶¶ 7–16. On the evening of September 2, 2019, Oakie was a guest at JoLave Gunville's home in Eagle Butte, South Dakota. Doc. 117 at ¶ 8. Gunville has a 12-year-old daughter, B.W., and a 10-year-old daughter, B.J.W. (the victim), both of whom reside with Gunville at her house. Doc. 117 at ¶ 8. Several hours after the two girls had retired to their shared bedroom for the evening, Oakie gave Gunville and some friends a ride to another residence. Doc. 117 at ¶ 10. After Oakie had dropped Gunville and her friends off at that location, he returned to Gunville's residence. Doc. 117 at ¶ 10. At approximately 6:30 a.m., B.W. had left the bedroom to use the bathroom. Doc. 117 at ¶ 13. When B.W. returned, she observed Oakie touching B.J.W while B.J.W. lay in her bed. Doc. 117 at ¶ 13. B.W. asked Oakie to stop touching her sister. Doc. 117 at ¶¶ 13, 16. B.J.W. reported that Oakie touched her through her onesie pajamas in three different places: her chest, her vagina, and her butt. Doc. 117 at ¶¶ 14–16.

Under the sentencing guidelines, Oakie's total offense level was 27 and Oakie was in criminal history category III. Doc. 117 at ¶¶ 30, 37. This meant that Oakie's advisory guideline range was 87 months to 108 months custody. Doc. 117 at ¶ 74. This Court held a sentencing hearing in Oakie's case on January 13, 2020. Doc. 121. After hearing argument from both parties as to the appropriate sentence, this Court sentenced Oakie to 96 months custody on each count to run concurrently with a seven-year term of supervised release on each count, also to run concurrently. Docs. 121, 122 at 2–3. Oakie has been in custody since May 23, 2018, and is currently incarcerated at FCI Pekin. Doc. 141; see also Find an Inmate, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Nov. 24, 2020).

In early 2020, a novel coronavirus, COVID-19, quickly spread across the United States and infiltrated correctional institutions. As a new virus, COVID-19 has presented somewhat of a

2

mystery to medical professionals and society in general. Some people can contract the virus and be completely asymptomatic, while other people develop complications and die from the illness. The Centers for Disease Control and Prevention (CDC) have identified certain underlying health conditions that put individuals at higher risk for a severe form of the illness if they contract the disease. Among those at higher risk are individuals with cancer, chronic kidney disease, obesity, serious heart conditions, sickle cell disease, and Type 2 diabetes. See People with Certain Medical Conditions, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited Nov. 30, 2020).

Oakie currently suffers from hypertension and obesity, and he is blind in his right eye. Doc. 138 at 5, 32, 49, 110–11, 116–19. He also maintains that he is the sole caregiver to his mother who suffers from a number of health conditions. Docs. 144, 136 at 1. Oakie has now filed a motion for compassionate release with this Court based on those circumstances and his inability to practice social distancing in the correctional facility setting during the COVID-19 pandemic. Doc. 136.

## II.   Legal Standard

Generally, a "court may not modify a term of imprisonment once it has been imposed," except in a few, narrow circumstances. 18 U.S.C. § 3582(c). The compassionate release statute as amended by the First Step Act of 2018 provides one of those narrow avenues through which a sentence may be modified. The compassionate release statute provides in pertinent part that:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may

3

> reduce the term of imprisonment ... after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A). "The district court has broad discretion in determining whether proffered circumstances warrant a reduction in sentence." United States v. Loggins, 966 F.3d 891, (8th Cir. 2020). Ultimately, the defendant bears the burden of establishing that a sentence reduction is warranted. See United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016).

### III.   Discussion

Oakie submitted a request for compassionate release to the warden of his institution on September 10, 2020, outlining some of his medical conditions and his possible release plan. Doc. 136-1. This request was submitted more than thirty days ago, and the BOP has not submitted a motion for compassionate release on Oakie's behalf. Therefore, this Court may entertain Oakie's motion directly.

In determining whether compassionate release is justified, this Court must consider the sentencing factors in 18 U.S.C. § 3553(a), determine whether "extraordinary and compelling reasons" warrant a sentence reduction, and evaluate whether a sentence reduction is consistent with the Sentencing Commission's applicable policy statements. See 18 U.S.C. § 3582(c). The sentencing factors found in 18 U.S.C. § 3553(a) instruct this Court to consider the applicable guidelines issued by the Sentencing Commission; "the nature and circumstances of the offense and the history and characteristics of the defendant;" the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the

offense;" to adequately deter criminal conduct, to protect the public; and "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a). This Court also should consider the need to avoid unwarranted sentence disparities among similarly situated defendants. 18 U.S.C. § 3553(a)(6).

In conducting its analysis on compassionate release motions, this Court begins by considering the applicable § 3553(a) sentencing factors. The nature and circumstances of the offenses are detailed above and are disturbing. Those facts, along with Oakie's criminal history points, resulted in an 87-108 month guideline range under the sentencing guidelines. A guideline range sentence like the one imposed was necessary for several reasons. First, a lengthy sentence adequately reflected the seriousness of the offense and provided just punishment. Second, the type of criminal conduct at issue here requires a powerful deterrent, and the 96-month sentence was designed to protect the public and to allow Oakie to participate in the sex offender program and provide Oakie with substance abuse treatment in an effective manner. Doc. 122 at 2, 5. Overall, the 96-month sentence was sufficient to achieve the § 3553(a) sentencing factors, but it was not greater than necessary. Oakie has now served approximately 28.1% of his full sentence and has served approximately 33% of his "statutory term." Doc. 138 at 143. Since he entered BOP custody, Oakie, now age 39, has completed an education course in economics and has had only two disciplinary violations during his incarceration for this case. Doc. 138 at 138, 140.

This Court next determines whether "extraordinary and compelling" reasons exist to modify a sentence. Congress has directed the Sentencing Commission to describe and provide examples of what constitutes "extraordinary and compelling" reasons with respect to the compassionate release statute. 28 U.S.C. 994(t). The Sentencing Commission provided such examples in the commentary to United States Sentencing Guideline 1B1.13. Those reasons

5

include the defendant's terminal illness or debilitating physical or mental condition, the defendant's age in combination with the proportion of his sentence served, and certain family circumstances. U.S.S.G. § 1B1.13 cmt. n.1(A)–(C). The Sentencing Commission also included a "catch all" provision which allows one to find "extraordinary and compelling" reasons other than those specifically listed "[a]s determined by the Director of the Bureau of Prisons." U.S.S.G. § 1B1.13 cmt. n.1(D). However, since the First Step Act was passed, the Sentencing Commission has not updated its policy statement because it has not had a quorum. As a result, district courts have questioned whether the policy statement still applies and whether courts may consider other "extraordinary and compelling" reasons under the "catch all" provision. See United States v. Mondaca, No. 89-CR-0655 DMS, 2020 WL 1029024, at *3 (S.D. Cal. Mar. 3, 2020) (discussing the discord among district courts); United States v. Spears, No. 98-0208-SI-22, 2019 WL 5190877, at *3 (D. Or. Oct. 15, 2019) (same); United States v. Brown, 411 F. Supp. 3d 446, 449–50 (S.D. Iowa 2019) (same). Many district courts have determined that the discretion given to the Director of the BOP by the Sentencing Commission extends to federal judges and allows them to consider "extraordinary and compelling reason[s] other than" those specifically described. United States v. Condon, No. 3:12-cr-00091-10, 2020 WL 2115807, at *3 (D.N.D. May 4, 2020) (listing cases that found federal judges may apply the "catch all" provision of U.S.S.G. § 1B1.13 comment note 1(D)).

Oakie primarily argues that he qualifies for compassionate release under the serious physical or medical condition provision of U.S.S.G. § 1B1.13 comment note 1(A). Comment note 1(A) provides in relevant part that "extraordinary and compelling" reasons may exist if the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional

6

facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). However, Oakie does not claim that it is his serious physical or medical condition that makes him unable to provide self-care in his correctional facility. Rather, he argues that the conditions of confinement, a factor not contemplated by the comment note, make it difficult or impossible to practice the type of self-care recommended by the CDC. Docs. 136 at 1; 140 at 5–7. Therefore, Oakie cannot establish "extraordinary and compelling" reasons to justify a sentence reduction under comment note 1(A)(ii).

Oakie also appears to argue that he qualifies for compassionate release under the family circumstance provision of U.S.S.G. § 1B1.13 comment note 1(C). Comment note 1(C) provides in relevant part that "extraordinary and compelling" reasons may exist if there is the "death or incapacitation of the caregiver of the defendant's minor child or minor children" or the "incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13 cmt. n.1(C). However, Oakie does not claim that the caregiver of his minor child died or is incapacitated or that his spouse is incapacitated and that he is the only available caregiver. Rather, Oakie argues that, as her only biological son, he is the sole caregiver for his aging mother, a situation not contemplated by the comment note. Docs. 140, 136 at 1. Therefore, Oakie cannot establish "extraordinary and compelling" reasons to justify a sentence reduction under comment note 1(C).

Finally, this Court considers Oakie's circumstances under the "catch all provision" of U.S.S.G. § 1B1.13 comment note 1(D). Oakie argues that his inability to practice social-distancing and to comply with other CDC guidelines during the COVID-19 pandemic establish an "extraordinary and compelling" reason other than those specifically identified to justify a sentence reduction. Docs. 136 at 1; 140 at 5–7.

The COVID-19 pandemic has impacted this country and its economy in extraordinary ways. However, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

Oakie suffers from obesity and hypertension. Obesity is a known risk factor for severe complications of a COVID-19 infection while hypertension may be a risk factor for severe complications of a COVID-19 infection. In any event, the extent to which those risk factors increase mortality rates from COVID-19 to an otherwise healthy 39-year-old man are unclear. This Court cannot say to what extent Oakie's life is threatened by the existence of COVID-19 in FCI Pekin, especially considering that the BOP has taken precautions to protect him and his fellow inmates. See BOP Implementing Modified Operations, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited Nov. 30, 2020). FCI Pekin currently has 12 active inmate infections of COVID-19 and 11 active COVID-19 cases among the facility's staff; 183 inmates and 27 staff have recovered from the illness, and the facility has reported no deaths. See COVID-19, Coronavirus, Federal Bureau of Prisons https://www.bop.gov/coronavirus/ (last visited Nov. 30, 2020).

Oakie has served only approximately 26 months of his 96-month sentence for sexually assaulting a minor child. Oakie appears, to his credit, to have worked on improving himself in custody with coursework. Overall, the original sentence was chosen with care, considering Oakie's and his community's needs and all of the other applicable sentencing factors. Despite the risks posed by COVID-19, this Court does not find "extraordinary and compelling reasons" to justify a

sentence modification because such a reduction would not be sufficient to achieve the goals of sentencing.

### IV. Conclusion and Order

Therefore, it is hereby

ORDERED that Oakie's motion for compassionate release, Doc. 136, is denied.

DATED this 30th day of November, 2020.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE